## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**SHAWNA TANNER, individually and as**
**personal representative of JAY HINTON, JR.,**

     **Plaintiffs,**

**v.**                               **No.  17-cv-876 JB-JFR**

**TIMOTHY I. MCMURRAY, M.D.,** *et al.***,**

     **Defendants.**

### PLAINTIFF TANNER'S REPLY TO COUNTY DEFENDANTS' RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT ON IPRA CLAIMS

Plaintiff Tanner, through her attorneys of record, Kennedy, Hernandez & Associates, P.C., hereby replies as follows to the County Defendants' Response to her Motion for Partial Summary Judgment on IPRA Claims (Doc. 252) filed May 6, 2019.[1]  The County Defendants' response does not dispute that the County bears "'[t]he burden ... to justify why the records sought to be examined should not be furnished.'"  *City of Farmington v. Daily Times*, 2009-NMCA-057, ¶ 13, 146 N.M. 349, 210 P.3d 246 (quoting *State ex rel. Newsome v. Alarid*, 1977-NMSC-076, ¶ 35, 90 N.M. 790, 568 P.2d 1236); *accord Noll v. N.M. Dep't of Pub. Safety*, No. A-1-CA-35981, 2019 WL 1615040, ¶ 16 (N.M. Ct. App. Mar. 19, 2019) (unpublished); *cf. U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989) (placing similar burden on government in FOIA litigation).  The County Defendants fail to meet that burden here as to the IPRA claims on which Plaintiff Tanner seeks summary judgment.

---

[1]In Footnote 7 of their response (Doc. 252, at 9 n.7), the County Defendants incorporate the points and authorities contained in their Motion for Summary Judgment (Doc. 221).  Plaintiff Tanner will likewise adopt and incorporate by reference her briefing and exhibits on her motion for summary judgment into her response to the County's cross-motion, and *vice versa*. While Plaintiffs' counsel typically does not attach exhibits to a reply brief on a summary-judgment motion, in this instance Plaintiff Tanner is filing this reply brief before her response to the County Defendants' cross-motion is due.  Thus, the County will have the opportunity to address the exhibits attached hereto in a subsequent reply brief on its own cross-motion.

I.      **Plaintiff Tanner's Response to the County's Statement of Additional Facts**

**A.**   In response to the County's Additional Fact No. 1, Plaintiff Tanner admits that she sent her first two IPRA requests (Doc. 225-2 & 225-5) on the dates indicated on those requests. Plaintiff Tanner denies the remainder of the allegations in Additional Fact No. 1.   The last message from the County's records custodian regarding Plaintiff Tanner's first IPRA request stated that "all other requested documents are with our Office of Professional Standards and is not ready for release, as it is still in the investigation process. *Those items will be released as soon as the investigation is completed.*"  (Doc. 225-3, at 1.)  (Emphasis added.)   At the County's Rule 30(b)(6) deposition, Ms. Cooke testified that she did not know if the Office of Professional Standards ("OPS") report was ever produced in response to this IPRA request, or who would be responsible for making the decision on which documents to provide.  (Doc. 225-14, at 30:22-32:10.)  Ms. Cooke testified that a "criminal investigation"--not the OPS investigation--was the County's only reason for not releasing records responsive to the first IPRA request. (Doc. 225-14, at 29:17-29:24.)  Ms. Cooke did not testify that the County ever informed the requester that responsive records were being withheld based on any specific exception provided in IPRA. (Doc. 221-8, at 82:12-82:18.)  The last message from the County's records custodian regarding Plaintiff Tanner's second IPRA request stated that:   "I contacted our OPS department who informed me the request is still under investigation." (Doc. 225-6, at 1.)  That message did not indicate whether any records were going to be withheld or released.  At the County's Rule 30(b)(6)  deposition, Ms. Cooke testified that she did not know of any further correspondence that the County sent to the requester about the second IPRA request.  (Doc. 221-8, Cooke Dep. at 36:10-36:20.)  Plaintiff Tanner made additional IPRA requests, and some records responsive to those requests were also responsive to her first two IPRA requests.  (Doc. 225-7 & 225-10.)  Not

all records responsive to Plaintiffs' IPRA requests were produced in this litigation.  *See* Doc. 225, at Plaintiff's Statement of Facts Nos. 3- 14.

      **B.**  In response to the County Defendants' Additional Fact No. 2, Plaintiff Tanner admits that the County Defendant sent discovery requests asking her to search for, identify, and produce records which were responsive to her own IPRA requests.  Plaintiff Tanner denies the remainder of the allegations in Additional Fact No. 2.   Plaintiff Tanner repeatedly supplemented her responses to those discovery requests both before and after filing her motion for partial summary judgment and continues to identify additional records responsive to her IPRA requests which the County did not timely produce  *See* Ex. 20 & 21 attached hereto; Doc. 216-14, 216-5, 216-6.

## II.    Plaintiff Tanner's Reply to the County's Response to her Statement of Facts

      **C.**  The County's responses to Plaintiffs' Statement of Facts ("PSOF") Nos. 1, 7, and 10 fail to cite any contrary evidence in the record to dispute those facts.  The County's Exhibit F (Doc. 226-1) only consists of excerpted portions of Plaintiff Tanner's IPRA correspondence, which are already in the record as Plaintiffs' Exhibits 2, 3, 5, 7, 8, 9, 10, 11, 12, and 13 (Doc. 225-2 through 225-13.)  Discovery in this litigation did not commence until after the County had already deemed its response to Plaintiff Tanner's fourth and last IPRA request "closed." *Compare* Doc. Doc. 21, 26 *with* Doc. 225-11, 225-12, 225-13, 225-14.

      **D.**  In reply to the County's contentions regarding PSOF Nos. 2 and 3, the reasons for Plaintiff Tanner's second IPRA request or whether Plaintiff Tanner or her counsel were subjectively aware of why the County failed to comply with her requests is immaterial.  "IPRA makes clear that all public entities must furnish records without regard to who is requesting the records and cannot require disclosure of the reason for inspecting the records." *San Juan Agr. Water Users Ass'n v. KNME-TV*, 2011-NMSC-011, ¶ 31, 150 N.M. 64, 257 P.3d 884.

"Requiring a person to state the reason for a request, either directly or by implication, could have a chilling effect on the free flow of information and potentially compromise the public entity's prompt compliance with the request."  *Id.* ¶ 32.  For example, an "agency may hesitate before providing information to an advocacy organization because of an assumed motivation behind the request."  *Id.*  It follows that a requester's identity or subjective motivations are irrelevant.  They neither excuse non-compliance with IPRA nor create a disputed issue of material fact.

**E.**  In reply to the County's contentions regarding PSOF No. 4, the total number of cameras at MDC and the estimated time to review all of them is immaterial, because other records already in the County's possession, such as shift logs and witness statements, indicated Plaintiff Tanner's locations and movements in the facility during specific times on the requested dates, thereby allowing the County to limit its search for video recordings to a much smaller number of cameras covering those specific locations and times.  PSOF No. 4 and the attached Exhibit 22 specifically identify five cameras and six time periods for which the County is inexplicably missing video recordings that would have shown significant, documented events during Plaintiff Tanner's incarceration at MDC.  *See* Ex. 22 & Doc. 216-6.  That the County was able to locate and produce videos from those same cameras for other intervals within the relevant time period shows that Plaintiff Tanner's requests were reasonably particularized and did not ask for all video footage from all 200 cameras throughout the entire facility.  (Doc. 225-2, 225-5.)

**F.**  In reply to the County's contentions regarding PSOF Nos. 5 and 6, the records custodian never informed Plaintiff Tanner's counsel that the requested records would not be produced due to a pending investigation, or that she would need to re-request the same records.[2]

---

[2]As noted in Paragraph A above, the last message regarding the first IPRA request specifically stated that the responsive records at issue "will be released as soon as the investigation is completed," (Doc. 225-3, at 1), and the last message regarding the second IPRA request only stated that "the request is still under investigation."  (Doc. 225-6, at 1.)

The County's IPRA correspondence never specifically referenced an investigation by the Bernalillo County Sheriff's Department ("BCSD"), much less invoked such a BCSD investigation as a reason for not releasing responsive records under IPRA.  That the BCSD investigation was already completed before the second IPRA request means that investigation could not have provided a reason for withholding records as of that date.  (Doc. 252-1.)  In any event, Plaintiff Tanner's counsel submitted further IPRA requests, as well as discovery requests in this litigation, which asked for records that should have been produced much earlier in response to her first two IPRA requests.  *See* Paragraph A above.

G.  In reply to the County's contentions regarding PSOF Nos. 8 and 9, the County's records custodian stated that Plaintiff Tanner's third IPRA request was "broad and/or burdensome" on August 30, 2017 (Doc. 225-8), but only extended the time to respond to that request until October 27, 2017, when the County deemed the request "closed" (Doc. 225-9).  The County did not notify the requester that additional time was needed to respond after October 27, 2017.  Thus, allegations that the request was broad or burdensome do not provide a justification for the County's failure to provide a complete and adequate response by that date.  *See Britton v. Office of the Atty. Gen.*, 2019-NMCA-002,¶ 32, 433 P.3d 320.  The County's response of October 27, 2017, was not complete or accurate, as it failed to describe which of the records sought were not "releasable" or provide a timely written explanation for the denial of any of those records, as required by Section 14-2-11(B) of IPRA.  (Doc. 225-9.)  *See* NMSA 1978, § 14-2-11(B); *Britton*, 2019-NMCA-002,¶¶ 30-31.  The records which the County's litigation counsel produced in this litigation on January 24, 2018, do not include all records responsive to Plaintiff Tanner's third IPRA request in the County's possession, custody, or control, and the County cited no evidence in the record to dispute Plaintiffs' contention that responsive records

held by its contractors, CCS and the Robles law firm, were in the County's possession, custody, or control at that time. *See* PSOF No. 8, 9.  Counsel's letter of January 24, 2018, also did not provide any written explanation of the denial as to the records sought which the County did not produce as of that date (Doc. 252-6), such as the records provided to Dr. Greifinger which were later logged and produced in this litigation pursuant to this Court's orders (Doc. 214-1, 253). The HSU shift logs Bates numbered "Tanner v. Bernalillo County 000958-001055" were responsive to, but not produced with, the County's earlier IPRA correspondence regarding Plaintiff Tanner's third IPRA request.  Those logs were not produced until October 11, 2018, *see* Ex. 23, after Plaintiffs' counsel learned of their existence through questioning a witness at a deposition on October 4, 2018, *see* Ex. 24, at 99:3-99:12.  The County's Exhibit G (Doc. 221-7) is a list of the records that *Plaintiffs* produced to *Defendants* in response to the CCS Defendants' Request for Production No. 15 (Bates-numbered IPRA 000001-000969).  *See* Ex. 25.  That Plaintiffs' counsel must search for, compile, organize, and reproduce Defendants' own records back to them through discovery in this litigation is further evidence of the inadequacy of the County's IPRA search procedures.  *See Britton*, 2019-NMSC-002, ¶¶ 10-11.

**H.**  In reply to the County's contentions regarding PSOF Nos. 11, 12, 13, and 14, the County cites no evidence in the record to show that the records custodian ever claimed or notified the requester that Plaintiff Tanner's fourth IPRA request was broad or burdensome pursuant to Section 14-2-10 of IPRA.  In any event, the County deemed that IPRA request closed as to Item Nos. 14 and 15 on December 4, 2017 (Doc. 225-10), closed as to all but Items 3 and 4 on January 9, 2018 (Doc. 225-11, 225-12), and closed in its entirety on February 14, 2018 (Doc. 225-13).  Thus, allegations that the request was broad or burdensome do not provide a justification for the County's failure to provide a complete and adequate response by the latter

date. *See Britton*, 2019-NMCA-002,¶ 32.  The correspondence attached as Exhibit E to the County's Response (Doc. 252-5) is responsive to Plaintiff Tanner's fourth IPRA request, but was not produced until after Ms. Cooke referred to the OPS records at the Rule 30(b)(6) deposition which Plaintiffs' counsel took on April 2, 2019.  (Doc. 225-14, at 30:22-31:11.)  The records listed on the County's Exhibit G under Bates numbers IPRA 000443-000553, IPRA 000842-000946, IPRA 000967-000968, and IPRA 000899-000912 (Doc. 221-7) are records that *Plaintiffs* produced to *Defendants* in this litigation as part of their response to the CCS Defendants' RFP No. 15, as noted above.  *See* Ex. 25.  The committee records listed as Item Nos. 1 through 4 of Plaintiff Tanner's fourth IPRA request are not limited to calendar invitations and are not the same as the records provided to Dr. Greifinger.[3]  The County cites no evidence in the record to show that the committee materials sought in the fourth IPRA request were subject to a confidentiality order in the *McClendon* litigation.  The record does reflect, however, that those committee materials are subject to this Court's Memorandum Opinion and Order (Doc. 253) holding that they are relevant, discoverable, and not privileged.  Again, the County cites no evidence in the record to support its contention that records which the County's own command staff received and used during the committee meetings at issue were not "public records" under Section 14-2-6(G) of IPRA.  (Doc. 225-16, at 20-45.)  If the County allowed responsive records to be removed from its facility while IPRA requests for those records were pending, that behavior would evince bad faith failure to comply its obligations under the statute. *See Judicial Watch, Inc. v. U.S. Dep't of State*, 272 F. Supp. 3d 88, 92-93 (D.D.C. 2017) (proof of an adequate search requires evidence of a "good faith effort" that is not controverted by either

---

[3]As noted in Paragraph G above, the records provided to Dr. Greifinger were sought in Plaintiff Tanner's third IPRA request, not her fourth request.  Similarly, the records which the County's  litigation counsel produced to Plaintiffs' counsel on January 24, 2018 (Doc. 252, at 6) were responsive to Plaintiff Tanner's third IPRA request, not her fourth IPRA request.

contrary evidence in the record or by evidence of agency bad faith). Finally, the County's claim to have previously disclosed the "Code 43 memorandum" referenced on Page 8 of its response (Doc. 252, at 8) is demonstrably false. A comparison of the two attached documents shows that the memorandum from Lt. Pierce to Capt. Lucero dated October 16, 2016 (Tanner v. Bernalillo County 000843) is a completely different document than the memorandum from Lt. Jackson to Assistant Chief Chavez dated October 23, 2016 (Tanner v. Bernalillo County 001729). *Compare* Ex. 26 with Ex. 27. The latter memorandum (Ex. 27) is responsive to several of Plaintiffs' IPRA requests and discovery requests, but was not produced until April 8, 2019, after Plaintiffs' counsel first learned of the existence of the OPS report at the Rule 30(b)(6) deposition of the County on April 2, 2019. (Doc. 225-14, at 30:22-31:11.) That the County withheld this "smoking gun" memorandum--as well as the entire OPS report and its underlying documentation--until so late in discovery in this litigation is further evidence of the County's bad faith failure to comply with its obligations under IPRA. *See San Juan Agr. Water Users Ass'n*, 2011-NMSC-011, ¶¶ 31-33; *cf. Judicial Watch, Inc.*, 272 F. Supp. 3d at 92-93.

**I.** In reply to the County's contentions regarding PSOF No. 15, the deposition testimony the County cites (Doc. 252-4, at 81:10-81:23) does not meet the County's burden of proving an adequate search, *see Judicial Watch, Inc.*, 272 F. Supp. 3d at 92-93, and is undermined by what the witness stated elsewhere in the transcript (Doc. 225-14). Given the many missing records which were not produced as of the time the County stated that the last two IPRA requests were "closed," as well as the many missing or unexplained elements of the search (Doc. 225-14), Plaintiff Tanner has conclusively rebutted any presumption of an adequate, good faith search. *See Britton*, 2019-NMSC-002, ¶¶ 31-33; *Judicial Watch, Inc.*, 272 F. Supp. 3d at 92-93.

**J.** In reply to the County's contentions regarding PSOF No. 16, the County cites no

evidence in the record to show that the County timely notified Plaintiff Tanner's counsel that it was invoking an exemption under Sections 14-2-1(A)(4) or (A)(8) of IPRA, or to establish the factual prerequisites needed to prove those exemptions apply.  The BCSD detective said she was only writing "an informational report," with the understanding that the incident was "heading into a ... civil lawsuit."  Doc. 225-18, at 4:15-4:23.  She also said "we haven't found anything that would be considered criminal."  *See* Ex. 28, at 2:11-2:15.  The BCSD detective advised a witness that "when you are deposed by other attorneys from ... other entities, then you will most likely have your company's attorneys with you and they can advise you want you can and can't say.  So ... again, we're just documenting this."  *See* Ex. 29, at 4:2-4:8.  When the OPS investigator interviewed Defendant McMurray, CCS's attorney was present and advised the witness on what he could say.  *See* Ex. 30, at 4:21-6:10.  During the recorded interviews, both the BCSD detective and the OPS investigator told witnesses about other witnesses they had interviewed and what those witnesses said.  *See, e.g.,* Ex. 28, at 2:20-23; Ex. 29, at 3:18-3:21; Ex. 30, at 4:10-4:20; Doc. 225-18, at 4:15-5:7.  The BCSD and OPS reports were not based solely on those recorded interviews, *see* Ex. 30, at 5:6-5:8, but also involved review of pre-existing records such as Lt. Jackson's memorandum of October 23, 2016, *see* Ex. 27.  Thus, even if a report was not completed as of the dates of the first or second IPRA requests, or a particular piece of information collected during the investigation met the requirements for an exemption from disclosure, that would not exempt the rest of the requested records from disclosure.

III.    **None of the records responsive to Plaintiffs' IPRA requests are subject to the exception for "law enforcement records" in Section 14-2-1(A)(4) of IPRA.**

There are four reasons why the County has not met its burden of proving that records responsive to Plaintiff Tanner's IPRA requests qualify for the exception for "law enforcement records" in Section 14-2-1(A)(4) of IPRA.  First, the County cannot meet that burden merely by

pointing to an absence of evidence in Plaintiff's favor. *See Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008) (explaining the burden a movant must meet to obtain or avoid summary judgment when the movant bears the burden of proof on the issue at trial). Second, neither "investigation" discussed in the County's response qualifies as the type of *confidential* "criminal investigation" for which the "law enforcement records" exception applies, and merely citing conclusory deposition testimony from the County's 30(b)(6) witnesses as to which exception to disclosure they now want to invoke does not establish the factual prerequisites for that claimed exception. *See Noll*, *supra*, 2019 WL 1615040, ¶ 20. Third, even if there were a qualifying "criminal investigation," the pendency of the investigation alone does not provide a permanent, blanket exception to providing any records, and merely collecting records during the course of an investigation does not make all the collected records themselves exempt from disclosure. *See id*. ¶¶ 19-20. Fourth, even if there were a valid basis for temporarily withholding some records under the exception in Section 14-2-1(A)(4) of IPRA, the County would still be obliged to respond to Plaintiff's IPRA requests and meet all the procedural requirements for denying those requests, including identification of which documents are being withheld under which exception, and producing the non-exempt portions of the records. *See id.* Additional authorities supporting Plaintiffs' arguments on each of these points are provided in her motion. (Doc. 225, at 20-25.)

**IV.    None of the records responsive to Plaintiff's IPRA requests are subject to the exception for records subject to a court order in Section 14-2-1(A)(8) of IPRA.**

The same principles apply to the County's belated claim that records provided to Dr. Greifinger are exempt from disclosure "as otherwise provided by law" under the catch-all exception in Section 14-2-1(A)(8) of IPRA. The County's IPRA correspondence did not timely notify Plaintiff Tanner that the County was claiming such an exemption. Thus, on its face, the County's IPRA correspondence is incomplete and inadequate to satisfy the notification

requirements in Section 14-2-11(B) of IPRA.  *See Britton*, 2019-NMCA-002, ¶¶ 30-33.   In this litigation, the County did not raise the *McClendon* confidentiality order as grounds for denying Plaintiffs' Request for Production No. 5 until its response to Plaintiff's motion to compel records responsive to that request. *Compare* Doc. 38-8, at 2, *with* Doc. 39, at 2.   But the County later allowed production of the records provided to Dr. Greifinger in this litigation without any modification or enforcement of the *McClendon* confidentiality order.   *See* Doc. 214 & 214-1. This Court ruled that those records were relevant, discoverable, and not privileged.   *See* Doc. 253.   Any reports by Drs. Shansky and Ray included in the records provided to Dr. Greifinger are not privileged as "litigation consultant" materials under Fed. R. Civ. P. 26(b)(3) or (4), because those rules do not prohibit disclosure of a consultant's reports when a testifying expert (in this case, Dr. Greifinger) relied upon them or collaborated with the consultant. *See United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 288 F.R.D. 222, 228 (D.D.C. 2012); *Heitmann v. Concrete Pipe Machinery*, 98 F.R.D. 740 743 (E.D. Mo. 1983).

**V.      The County's response fails to address the remainder of Plaintiff's IPRA claims.**

The County's response admits that the County did not respond to Plaintiff Tanner's first and second IPRA requests and only contends that some records were produced in response to Plaintiff Tanner's third and fourth IPRA requests.   The mere fact that some records were produced does not meet the County's burden of proving compliance with IPRA, as the statute requires responses that are both complete and adequate to satisfy all of the statute's substantive and procedural requirements outlined on Pages 20-23 of Plaintiff's motion (Doc. 225).   *See Britton*, 2019-NMCA-002, ¶¶ 30-33.   IPRA's provision for an extension of time to respond to broad or burdensome requests does not excuse the County from providing a complete and accurate response at the time it deems a request closed.  *See id.* ¶ 32.   That responsive records

are ultimately discovered through the requester's litigation efforts or from other sources does not excuse the records custodian's earlier non-compliance with IPRA.  *See, e.g., id.* ¶¶ 10-11.  Such discoveries rebut any presumption that the records custodian's original search for such records was adequate.  *See* Doc. 225, at 13-20.  The County's records custodian has not produced any testimony which contains the elements necessary to invoke such a presumption.  *See Judicial Watch, Inc.*, 272 F. Supp. 3d at 92-93.  The County also provides no authority to rebut the precedents which hold that records held by private contractors such as CCS or the Robles law firm are still public records "used" or "received" by the County within the meaning of Section 14-2-6(G) of IPRA and within its responsibility, custody, or control under Section 14-2-8(E) of the statute.  *See* Doc. 225, at 16-20; Doc. 225-16, at 20-45.

Federal courts often resolve issues of liability under IPRA's federal counterpart through motions for summary judgment.  *See Judicial Watch, Inc.*, 272 F. Supp. 3d at 92-93.  Such issues are amenable to summary judgment because the primary evidence in an IPRA case usually consists of the IPRA requests themselves and the written correspondence from the records custodian or other County representative responding to those requests.[4]  In this case, the parties' IPRA correspondence is already in the record and shows there is no genuine issue of material fact.  The County has not met its burden of proving an exemption from disclosure,  and Plaintiff Tanner is entitled to partial summary judgment on the County's liability as to each of her IPRA claims, as well as the additional declaratory relief requested in her motion.  (Doc. 225, at 27.)

---

[4]The County cites no authority to support its contention that  the pendency of this litigation excused its representative from communicating with Plaintiff Tanner's counsel regarding her IPRA requests.  Plaintiff Tanner's counsel promptly forwarded all of her IPRA requests to the County's litigation counsel after counsel entered her appearance and then copied her on all IPRA correspondence.  *See, e.g.,* Doc.  38-5, Doc. 225-10, at 3, Doc. 225-13.  IPRA does not state that correspondence can only come from the County's records custodian, but it must timely come from *someone* in order to satisfy the statutory notification requirements cited in Plaintiff Tanner's motion.

Respectfully Submitted,

  /s/ Arne R. Leonard
Paul J. Kennedy
Jessica M. Hernandez
Arne R. Leonard
Elizabeth A. Harrison
KENNEDY, HERNANDEZ & ASSOCIATES, P.C.
201 12th Street NW
Albuquerque, New Mexico  87102
(505) 842-8662
aleonard@kennedyhernandez.com

Nicole W. Moss
THE LAW OFFICE OF NICOLE W. MOSS, LLC
201 Twelfth Street NW
Albuquerque, NM  87102
(505) 244-0950
nicole@nicolemosslaw.com

Attorneys for Plaintiffs

I hereby certify that a copy of this reply
and its exhibits was delivered via CM/ECF
to all counsel of record in this matter on the date
indicated on the notice of electronic filing.

  /s/ Arne R. Leonard
Paul J. Kennedy
Jessica M. Hernandez
Arne R. Leonard
Elizabeth A. Harrison
KENNEDY, HERNANDEZ & ASSOCIATES, P.C.
201 12th Street NW
Albuquerque, New Mexico 87102
(505) 842-8662
aleonard@kennedyhernandez.com